IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ZACHARY LEE BARTHELMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 12-1349-JAR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Zachary Barthelman's applications for disability benefits under Title II of the Social Security Act,[1] and supplemental security income benefits under Title XVI of the Social Security Act.[2] Because the Court finds that Defendant Commissioner's findings are supported by substantial evidence, the Court affirms the decision of the Defendant Commissioner.

**I.    Procedural History**

On August 12, 2008, Plaintiff protectively applied for a period of disability, disability insurance benefits and supplemental security income benefits. His application claimed an onset date of July 16, 2008; and he was last insured for disability insurance benefits on June 30, 2009. Plaintiff's application was denied initially and upon reconsideration. Plaintiff timely requested a

---

[1] 42 U.S.C. §§ 401–434.

[2] 42 U.S.C. §§ 1381–1383f.

1

hearing before an administrative law judge ("ALJ"). After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Plaintiff then timely sought judicial review before this Court.

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[3] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of Defendant.[5]

## III.    Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[7] The Secretary has

---

[3] *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Id*. (quoting *Castellano*, 26 F.3d at 1028).

[5] *Id.* (citation omitted).

[6] 42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[7] *Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

established a five-step sequential evaluation process to determine whether a claimant is disabled.[8] If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[9]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[10] since July 16, 2008, the alleged onset date. Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: major depressive disorder with elements of bipolar disorder; anxiety disorder; panic disorder; polysubstance abuse in recent remission; and osteopenia.

But Plaintiff challenges the ALJ's determination: (1) at step three that Plaintiff's impairments did not meet or equal a listing; (2) of Plaintiff's Residual Functional Capacity (RFC) at step four based on the ALJ's erroneous evaluation of the medical evidence, including his erroneous failure to give controlling weight to the opinion of Plaintiff's treating physician and his erroneous evaluation of Plaintiff's credibility; and (3) at step five based on the ALJ's erroneous hypothetical question to the vocational expert, tainted by the ALJ's errors in steps three and four of the analysis.

## IV. Discussion

### A. Plaintiff's Impairments Did not Meet Listings 12.04 and 12.06

Plaintiff contends that the ALJ erred in determining that Plaintiff's mental impairments, considered singly and in combination, did not meet or equal the criteria for Listings 12.04 and

---

[8]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citations omitted).

[9]*Id.* (citations omitted).

[10]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

3

12.06.[11] Plaintiff has the burden at step three of demonstrating, through medical evidence, that his impairments "meet all of the specified medical criteria" contained in a particular listing.[12] Moreover, "[w]hether the findings for an individual's impairment meet the requirements of an impairment in the listings is usually more a question of medical fact than a question of medical opinion . . . [i]n most instances, the requirements of listed impairments are objective, and whether an individual's impairment manifests these requirements is simply a matter of documentation."[13] As discussed further, the Court finds that the ALJ properly found that Plaintiff failed to meet his burden of proving, through medical evidence, that his impairments met or equaled either Listing 12.04 or 12.06.

Listing 12.04, Affective Disorders,[14] requires a showing that claimant's impairments either meet the requirements of paragraphs A *and* B, or meet the requirements of paragraph C. And Listing 12.06 (Anxiety Related Disorders),[15] requires a showing that claimant's impairments either meet the requirements of paragraphs A *and* B, or meet the requirements of paragraph A *and* C.

With respect to both Listings 12.04 and 12.06, paragraph B requires that the claimant have at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration,

---

[11] *See* Doc. 19 at 4–5; Doc. 10–2 at 15.

[12] *See Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. March 22, 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

[13] *Avery v. Astrue*, 313 F. App'x 114, 121–22 (10th Cir. 2009) (quoting SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996)).

[14] *See* 20 C.F.R. 404, Subpt. P, App. 1 at 12.04 (2013).

[15] *See id.* at 12.06.

persistence or pace; or repeated episodes of decompensation, each of extended duration.[16] But, the ALJ found that Plaintiff had only moderate difficulties in activities or daily living, maintaining social functioning and maintaining concentration, persistence or pace; and further found that Plaintiff had experienced only one to two episodes of decompensation each of extended duration, fewer than the requisite three such episodes within one year, or an average of once every four months for a duration of at least two weeks.[17]

And, with respect to Listing 12.04, paragraph C requires that the claimant have:

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.[18]

With respect to Listing 12.06, the paragraph C criterion is simpler, the mental disorder is one "[r]esulting in complete inability to function independently outside the area of one's home."[19]

But, with regard to paragraph C, the ALJ found that there is no evidence that Plaintiff has an inability to function outside a highly supportive living arrangement, nor that he has a residual

---

[16]*Id.*

[17]Doc. 10–2 at 15.

[18]20 C.F.R. 404, Subpt. P, App. 1 at 12.04 (2013).

[19]*Id.* at 12.06.

5

disease process that would result in decompensation due to even a slight increase in mental demands or change in environment, nor a history of at least one year's inability to function outside a highly supportive environment or a complete inability to function independently outside of the home.[20]

Plaintiff contends that the ALJ erred in failing to give controlling weight to the opinions of his treating psychologist, Dr. Goodman, whose opinions, if credited, would have provided substantial evidence that Plaintiff meets the requirements of paragraphs B and C and thus meets or equals Listings 12.04 and 12.06. Indeed, Dr. Goodman rendered two statements of opinion, one dated January 13, 2010, and a second dated May 10, 2010. In the January 2010 statement, Dr. Goodman opined that Plaintiff's depression, augmented by anxiety, anger and frustration, causes Plaintiff to be incapacitated. He further opined that Plaintiff has difficulty concentrating, and has marked restrictions of activities of daily living, moderate difficulties maintaining social functioning and frequent deficiencies of concentration, persistence and pace. Dr. Goodman also opined that Plaintiff has had substantially more than three episodes of deterioration that each lasted several days or several weeks. Nothing in Dr. Goodman's treatment notes reflect these episodes of decompensation. In the May 10, 2010 statement, Dr. Goodman opined that Plaintiff's level of functioning was up and down, and would be "far worse" if he resided outside of the structured and supportive environment of his parents' home, and that if Plaintiff tried to work his functioning would deteriorate. Dr. Goodman also challenged the ALJ's finding that Plaintiff had not been particularly motivated to work, noting that lack of motivation is symptomatic of his depression.

---

[20]Doc. 10–2 at 16.

Any medical source's opinion of disability or employability is not dispositive.[21] But final responsibility for determining ultimate issues, such as a claimant's RFC and whether a claimant is disabled, are reserved to the Commissioner.[22] However, with respect to issues other than the ultimate issues, a treating source's opinion may be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record, but if it is "deficient in either of these respects, then it is not entitled to controlling weight."[23] Of course, even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference."[24]

Had the ALJ given controlling weight to the opinions of Dr. Goodman, this would have been substantial medical evidence that Plaintiff met the paragraph B and paragraph C criteria for Listings 12.04 and 12.06. But the ALJ did not give controlling weight to Dr. Goodman's opinion, and in fact, gave "little weight" to Dr. Goodman's opinions, for, in the Court's view, substantial and justifiable reasons. The ALJ adequately explained his reasons for giving only little weight to Dr. Goodman's opinions, discussing a number of the so-called *Goatcher* factors to be considered in evaluating the opinion of a treating source. These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the

---

[21]*Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (citation omitted).

[22]SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996).

[23]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).

[24]*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted).

7

>   physician's opinion is supported by relevant evidence; (4)
>   consistency between the opinion and the record as a whole; (5)
>   whether or not the physician is a specialist in the area upon which
>   an opinion is rendered; and (6) other factors brought to the ALJ's
>   attention which tend to support or contradict the opinion.[25]

Here, as the ALJ found, Dr. Goodman treated Plaintiff frequently over a course of one year, almost weekly, from August 2008 to October 2009. Dr. Goodman, a psychologist, provided psychological counseling and treatment, in his area of expertise. But despite Dr. Goodman's statements of opinion in January and May, 2010, his contemporaneous treatment notes demonstrate that while Plaintiff suffered from severe depression throughout the course of treatment, his depression improved over time and caused him only moderate or mild limitations, not marked limitations. In March of 2009, Dr. Goodman prepared a long summary, noting that Plaintiff continued to suffer from severe depression, fear, anger, nervousness, and experienced difficulty socially, and difficulty with concentration.

At the same time, Dr. Goodman consistently noted that Plaintiff's Global Assessment of Functioning score (GAF) was 53, until May 14, 2009, when Dr. Goodman scored Plaintiff's GAF at 55. Although Plaintiff's condition improved or worsened periodically, by the latter half of 2009, with few exceptions, Dr. Goodman noted that Plaintiff was: highly motivated for treatment; experiencing less depression; oriented to time, place and person; and exhibited no signs of delusions or hallucinations. In addition, by the latter half of 2009, Plaintiff was tapering off methadone, was drug and alcohol free for several months without relapse, and was gaining positive results from his prescribed medications. This was not a surprising development, given Plaintiff's newly found sobriety, since Dr. Goodman had continually advised Plaintiff that his

---

[25] *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)–(6)).

use of illicit drugs interfered with the efficacy of the prescribed medications.

The ALJ properly discounted Dr. Goodman's January and May 2010 statements of opinion, given that Dr. Goodman's contemporaneous treatment notes reflected ongoing improvement with nothing more serious than moderate limitations. There simply is no support in Dr. Goodman's notes for a finding that Plaintiff meets the paragraph B criteria of marked limitations, as opposed to moderate or mild limitations in activities of daily living, social functioning, or maintaining concentration, persistence or pace. And, although Plaintiff reported in 2009 that he was experiencing worsening symptoms of agoraphobia, Dr. Goodman encouraged Plaintiff to engage in more activities, including seeking employment, enrolling in classes, and exercising. Dr. Goodman also prescribed medications, as well as administered cognitive therapy, including having Plaintiff listen to "stress tapes;" and his notes reflect that those therapies proved helpful. Dr. Goodman's notes also reflect that although Plaintiff had difficulty maintaining concentration, at times, Plaintiff took copious notes of suggestions and recommendations Dr. Goodman offered during their weekly therapy sessions.

In short, the ALJ gave specific, legitimate reasons for disregarding Dr. Goodman's opinions, in particular, the inconsistency of his opinions with his contemporaneous treatment notes.[26] Notably, in his May 2010 statement, Dr. Goodman attempted to explain away the positive tone of his treatment notes, as well as his consistent scoring of Plaintiff in a range of 53 to 55 GAF scores, which is characterized as moderate. Dr. Goodman offers an explanation of his practices in recording GAF scores, noting that he does not follow rigid GAF definitions in the DSM manual and that his scoring does not reflect the downturns in Plaintiff's condition but only

---

[26]*See Goatcher*, 52 F.3d at 290.

the upturns. Dr. Goodman also offered that his treatment notes are "primarily a record of progress," and "focus on the positive" because he "already knew" how poorly Plaintiff was functioning. The Appeals Council considered this "new" evidence, in the May 2010 statement, but found that it did not provide a basis for changing the ALJ's decision. This Court agrees.

Not only does Dr. Goodman's May 2010 explanatory statement and opinion provide further reason to discredit him, the ALJ properly relied upon other *Goatcher* factors in determining to give little weight to Dr. Goodman's opinions, including other medical and nonmedical evidence. Notably, the ALJ found that both of Dr. Goodman's January and May 2010 statements of opinion were actually drafted by Plaintiff's *counsel*, not Dr. Goodman.

To be sure, another treating provider, nurse practitioner Ahrens offered similar dire opinions concerning the severity of Plaintiff's impairments, but her opinions also do not find support in the contemporaneous treatment notes. Moreover, while "acceptable medical sources" include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists,[27] they do not include nurse practitioners.[28] Rather, nurse practitioners are considered "other medical sources" from whom the ALJ will accept and use evidence showing the severity of a claimant's impairment and how the impairment affects the claimant's ability to work.[29]

Furthermore, the ALJ properly considered other medical evidence, including other medical evidence from Behavioral Health and Addiction Services, which assessed GAF scores

---

[27] 20 C.F.R. § 416.913(a).

[28] *Id.* at § 416.913(d).

[29] *Id.*

from 60 in August 2008 to 62 in February 2009 and 70 in October 2009. While GAF scores are not determinative of mental impairment, as the ALJ noted, DSM-IV, American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders indicates that GAF scores in the range of 51 to 60 indicate moderate limitation in functioning, while scores in the range of 61 to 70 indicate only mild symptoms. When a treating physician's opinion is inconsistent with other medical evidence, the ALJ must examine reports of other physicians to see if they outweigh the reports of the treating physician.[30] The ALJ ultimately must weigh and resolve evidentiary conflicts, and the Court cannot reweigh the evidence.[31] The Court finds that the ALJ properly weighed and resolved evidentiary conflicts, including determining that the reports of other physicians outweighed the opinions of Dr. Goodman.

The ALJ also considered nonmedical evidence, including Plaintiff's own testimony, claims and statements, but discredited those as well. Plaintiff contends that the ALJ erred in failing to properly evaluate Plaintiff's credibility. As the Tenth Circuit has explained, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."[32]

Here, the ALJ acknowledged Plaintiff's testimony and stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence," referencing a number of sections of the Social Security Act and

---

[30] *See Goatcher*, 52 F.3d at 290.

[31] *Rutledge v. Apfel,* 230 F.3d 1172, 1174 (10th Cir. 2000); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).

[32] *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted).

its regulations.[33] The ALJ expressly discussed the requirements of SSR 96-7p,[34] that the Commissioner perform a two step evaluation, first determining whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms; and then, taking into the consideration the entire case record, evaluating the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities.[35] The ALJ further acknowledged the requirement that whenever the claimant's claimed symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements, based on consideration of the entire case record, and that findings as to credibility should be closely and affirmatively linked to substantial evidence.[36]

Here, the ALJ properly noted the incongruity of reports by Plaintiff and his family that Plaintiff avoids going out in public, and relies upon family to take him places or run errands, with Plaintiff's reports that he drives himself to visit family and friends, and drives himself to buy illicit drugs and music supplies. To be sure, Plaintiff lived in a supportive living arrangement for more than one year, but there is no evidence that he cannot function at all outside of this arrangement. But, as the ALJ noted, Plaintiff is able to do household tasks, and despite his avoidance of public settings, drives his car to buy drugs, music supplies, and to go visit family and friends.

---

[33]Doc. 10-2, at 16 (citing 20 CFR §§ 404.1529, 416.929; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996)).

[34]SSR 96-7P, 1996 WL 374186 ( July 2, 1996).

[35]*Id.*; *Jones v. Astrue,* 500 F. Supp. 2d 1277, 1288–89 (D. Kan. 2007).

[36]*See Jones*, 500 F. Supp. 2d at 1288–89; SSR 96-7p.

And, although Plaintiff and his family, and even Dr. Goodman reported that Plaintiff struggled with personal care and hygiene, substantial evidence suggests otherwise. Dr. Goodman never noted this in his treating notes. And, records of the Behavioral Health and Addiction Services, from whom Plaintiff received drug treatment, consistently noted that his dress was appropriate and his hygiene was good. Nor is there evidence of repeated episodes of extended duration. Finally, there is no evidence that a minimal increase in mental demands or a change in environment would cause Plaintiff to decompensate. In fact, Dr. Goodman encouraged Plaintiff to increase his mental demands by enrolling in classes and seeking employment.

Based on the medical and nonmedical evidence, the ALJ properly discounted Dr. Goodman's opinion and properly concluded that there was not substantial evidence supporting Plaintiff's complete inability to function independently outside of his home. Plaintiff routinely drove himself to his methadone clinic, to the homes of friends and family, to stores, and to procure illicit drugs. In short, the ALJ properly found that Plaintiff did not meet either Listing 12.04 or 12.06.

**B. Substantial Evidence Supported RFC and Hypothetical Question Posed to Vocational Expert**

Plaintiff contends that the ALJ's determination of RFC at Step 4, and the corresponding hypothetical question posed to the vocational expert which incorporated that RFC, were erroneous. Plaintiff claims error because neither the RFC, nor the hypothetical question incorporated Dr. Goodman's opinion that Plaintiff had marked limitations in categories 6-9, 11, 14 and 15 of the Medical RFC Questionnaire. But the ALJ properly gave little weight to Dr. Goodman's opinions regarding Plaintiff's limitations for all of the reasons previously discussed.

13

Other than the claim that the RFC and hypothetical question should have included Dr. Goodman's opined limitations, Plaintiff does not otherwise challenge the ALJ's RFC determination, nor the hypothetical question. From the Court's review, there is substantial evidence supporting the RFC determination that Plaintiff can perform a range of sedentary work with a position change every 45-60 minutes for up to five minutes at a time, while remaining at the work station. And, there is substantial evidence supporting the RFC determination that Plaintiff is limited to simple, unskilled work with no contact with the general public and only occasional contact with coworkers and supervisors. Therefore, the hypothetical question which incorporated the ALJ's RFC determination was also proper.

## V. Conclusion

For these reasons, the Court concludes that the ALJ did not err in finding Plaintiff not disabled at steps three, four or five. Accordingly, the decision of the Commissioner will be affirmed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: January 8, 2014

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE